**UNITED STATES of America**

v.

**John David HEMBY.**

**Crim. No. 79–00004–01–R.**

United States District Court,
E.D. Virginia,
Richmond Division.

Dec. 19, 1983.

N. George Metcalf, Asst. U.S. Atty., Richmond, Va., for plaintiff.

Eddy P. Rice, Richmond, Va., James E. Swiger, Ashcraft & Gerel, Alexandria, Va., for defendant.

## ORDER AND OPINION

WARRINER, District Judge.

On 30 March 1979, defendant John David Hemby was sentenced by this Court to three years imprisonment as an adult for assaulting a correctional officer, in violation of 18 U.S.C. § 111, at the Petersburg Correctional Institute. The Court found that defendant "will not benefit from the provisions of the Youth Correction Act." Proceedings, 30 March 1979, at p. 59.

On 2 December 1981, the Supreme Court of the United States decided *Ralston v. Robinson*, 454 U.S. 201, 102 S.Ct. 233, 70 L.Ed.2d 345 (1981). *Ralston* dealt with the question of whether a youth offender who is sentenced to a subsequent adult term of imprisonment before completing a sentence imposed under the Federal Youth Corrections Act (YCA), 18 U.S.C. § 5005, et seq., must continue to receive YCA treatment for the remainder of his youth sentence.

Respondent in *Ralston* had been placed in a YCA facility in California. While there he pled guilty to a charge of assaulting a federal officer. The United States District Court for the Central District of California sentenced him under 18 U.S.C. § 5010(d) to an adult sentence of one year and one day and ordered that the sentence run consecutive to and not concurrent with the still uncompleted, earlier, YCA sentence.

Without waiting for the expiration of the YCA sentence, the Bureau of Prisons promptly re-classified respondent as an adult offender. Thereafter, though still serving the time imposed in his YCA sentence, respondent was not segregated from the adult prisoners and was not offered the YCA rehabilitative treatment that the initial sentence required. In other words, he was removed from YCA treatment and was imprisoned as an adult.

The Supreme Court determined that the Bureau was powerless so to alter the conditions of a defendant's imprisonment. Only the federal judiciary, it held, could perform this discretionary function. The Court found that the judge who sentences an offender, presently serving a YCA term, to a consecutive adult term may also require that the offender serve the remainder of his youth sentence as an adult. In other words, the second judge has two alternatives: he may modify the sentence of the first judge to the extent of requiring the remainder of the first sentence to be served as an adult and may also impose the second adult sentence on the offender. Or, he may allow the YCA sentence conditions to continue, and impose a second consecutive sentence, either YCA or adult. In order to apply the first alternative, however, the Supreme Court stated that the sentencing judge must make a finding on the record that "no further benefit" will be derived by the offender from the YCA. *Ralston* at 220 and 217, 102 S.Ct. at 245 and 243.

With this legal background, the United States in this case filed on 31 May 1983 a motion respecting Hemby. The United States seeks clarification of this Court's intent in sentencing Hemby. In the alternative, the United States seeks modification of the sentence. The United States recognized that the Bureau of Prisons after Ralston no longer had the authority to determine on its own to treat the defendant as an adult for the remainder of his YCA sentence. It recognized also that this Court had found defendant Hemby would "not benefit" from the Youth Corrections Act at the time the second sentence was imposed. The United States wants to treat the defendant as an adult for the remainder of his present YCA sentence. Accordingly, it requested this Court declare that that had been its intent at the 1979 sentencing to terminate his YCA status, alternatively, it asked the Court now to modify its 1979 sentence so as to permit the Bureau to remove Hemby from YCA confinement and to subject him to adult confinement for the remainder of his original YCA term.

The Bureau's request is prompted by Hemby's poor institutional adjustment. Defendant Hemby has actually been sentenced to federal prison terms on three separate occasions. His first conviction was for bank robbery for which he received

ten years under YCA by the United States District Court for the Southern District of New York. His second sentence was the adult sentence imposed by this Court on 30 March 1979 for a conviction of assault upon a federal correctional officer. Finally, on 19 June 1980, a United States Magistrate for the Western District of Tennessee imposed an additional six-month consecutive adult term following another conviction for assault. It is the recommendation of the Bureau of Prisons, based on Hemby's continued recalcitrance and the two consecutive adult terms which have been imposed upon him, that the remainder of Hemby's original YCA sentence should be served in an adult facility. The United States' motion is for the purpose of obtaining the necessary judicial authorization to effectuate this recommendation.

The Supreme Court's opinion in *Ralston* states specifically that the Bureau itself lacks "independent authority" to deny an offender the benefit of treatment under the YCA. *Ralston* at 211, 102 S.Ct. at 240. It held that a sentencing court has the power to modify an existing YCA sentence when imposing a consecutive adult sentence. Since this Court sentenced Hemby before *Ralston* was decided, the requisite finding to convert Hemby's YCA sentence into an adult sentence was not made. In its motion to modify, the government argues that "a decision requiring the remainder of an original YCA sentence to be served as an adult is equally proper when made by the second sentencing judge at a time subsequent to the imposition of the second sentence." United States Brief in Support of Motion for Clarification of Sentencing Intent, or in the Alternative, for Modification of Sentencing at p. 7.

The government argues that this continuing power to modify exists in only a narrow range of cases. Only cases, such as Hemby's, where the second, consecutive, adult sentence was imposed ante *Ralston* may the second sentencing court, post *Ralston*, modify the previous sentence in light of *Ralston*. The government contends that no other interpretation of *Ralston* is reasonable, that any other conclusion would

keep an inmate in a YCA facility for the duration of his YCA sentence regardless of the evidence that efforts at rehabilitation have proven futile unless additional federal charges resulted in a conviction which then allowed another sentencing proceeding. This, the government argues, violates the flexibility of the Youth Corrections Act itself as well as the spirit of the *Ralston* decision.

On 18 July 1983, this Court opined that the authority of this Court at the time of sentencing to modify the prior YCA sentence had *Ralston* then been understood as the law, was unquestioned. What remained open to serious question, however, was the authority of this Court now to make an explicit finding of "no further benefit" which it did not make in 1979, so as now to effect a modification of the original YCA sentence.

If one accepts, in the spirit of the *Ralston* reasoning, that there must be someone with the authority to modify a now futile YCA sentence, the question remains as to which judge is best situated to do so, but more importantly which judge, if any, has the jurisdiction to do so. The Court in its July opinion found at least three possible choices: First, the judge who imposed the original YCA sentence, he might be best situated to determine whether his sentencing objectives have been frustrated by subsequent events; second, the judge who imposed a subsequent adult sentence may, some time after that second sentencing, be in the best position in light of intervening events to determine the futility, *vel non*, of further YCA incarceration; and finally, a judge having territorial jurisdiction over the place at which the YCA defendant is incarcerated may, without regard to any sentencing role he may previously have played, upon petition of the Bureau of Prisons or the defendant make a determination on the basis of the defendant's YCA record whether continued treatment under YCA would be futile.

The Court requested further briefing on these alternatives and appointed counsel

for Hemby to aid him. In answer to the Court's specific question of whether it might have territorial jurisdiction over Hemby, since he is incarcerated in FCI Petersburg, within the Eastern Division of Virginia, the United States answered in brief that it could discern no authority for this Court to modify the terms of defendant Hemby's treatment on the basis of territorial jurisdiction. Defendant agrees that a federal judge's territorial jurisdiction over the place at which the YCA defendant is incarcerated does not give him the authority to modify an extant YCA sentence upon motion of either the Bureau or of defendant in the absence of any prior sentencing role.

■■■ Defendant's statement of the law in this regard is most persuasive. In his Brief in Support of a Motion to Dismiss, defendant reminds us that this is a court of limited jurisdiction, empowered to hear only such cases as are within the judicial power of the United States as defined in the Constitution, and entrusted to the courts by congressional jurisdictional grant. Moreover any party seeking to invoke this Court's jurisdiction must demonstrate that the Court is competent to hear the matter. Indeed, presumptively, the Court lacks jurisdiction in a particular case until it has been demonstrated that subject matter jurisdiction exists. *Turner v. President, Directors and Company of the Bank of North America,* 4 U.S. (4 Dall.) 8, 11, 1 L.Ed. 718 (1799). Extensive efforts to find authority to the contrary have been unavailing. Accordingly, I hold that no such territorial jurisdiction exists in a federal court over the terms of an incarcerated offender's sentence. Residual jurisdiction over that sentence, if it lies anywhere, lies in the original sentencing court or in a subsequent sentencing court.

■■■ In *Ralston* the Supreme Court construed 18 U.S.C. § 5010(d) and made clear that the subsequent sentencing court's authority to make a "no further benefit" finding with regard to the remainder of an initial, unexpired, YCA sentence derives from the subsequent court's sentencing powers. *Ralston* at 210, 102 S.Ct. at 239. A useful parallel in this regard is 18 U.S.C. § 3653 which treats revocation of probation. The statute states:

> If the probationer shall be arrested in any district other than that in which he was last supervised, he shall be returned to the district in which the warrant was issued, unless jurisdiction over him is transferred as above provided to the district in which he is found, and in that case he shall be detained pending further proceedings in such district.

Thus, once a convicted defendant is sentenced and placed on probation, jurisdiction over him is retained by the sentencing court until that court, for whatever reason, determines to transfer jurisdiction to another district. By analogy, I hold that whatever authority may exist in the original sentencing judge or in the judge who imposes a consecutive adult sentence to modify the terms of a YCA incarceration, that authority is not transferred by the physical presence of the defendant in some other district. While Congress obviously could establish such jurisdiction, it has not done so.

Defendant, however, continues this line of argument, to contend that both this Court, as the subsequent sentencing court, and the original sentencing court have lost jurisdiction to convert his YCA sentence into an adult sentence. For the reasons explained below I disagree and find the power of post sentencing conversion of a YCA sentence into an adult sentence vested in a judge on the basis of a residual sentencing authority over the incarcerated youth offender.

In *Dorszynski v. United States,* 418 U.S. 424, 435, 94 S.Ct. 3042, 3048, 41 L.Ed.2d 855 (1974), the Supreme Court commented on the scope of a sentencing judge's powers under the Youth Corrections Act:

> The legislative history clearly indicates that the Act was meant to enlarge, not restrict, the sentencing options of federal trial courts in order to permit them to sentence youth offenders for rehabilitation of a special sort. In other words,

the YCA was simply intended to add choices for the federal judge confronted with the need to sentence an offender under the age of 22 at the time of his conviction.

The Act in no way contemplated reducing the sentencing powers of the federal district judge as these have evolved over the years. Useful explication of the scope of these powers was given by the Supreme Court in *United States v. Tucker*, 404 U.S. 443, 447, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972):

It is surely true, as the government asserts, that a trial judge in the federal judicial system generally has wide discretion in determining what sentence to impose. It is also true that before making that determination, a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come. [Citations omitted]. The government is also on solid ground in asserting that a sentence imposed by a federal district judge, if within statutory limits, is generally not subject to review. [Citations omitted].

This broad scope at sentencing is subject to post sentencing restrictions on the sentencing court's power. It must be borne in mind that the language of Fed.R.Crim.P. 35(b) limits a court's jurisdiction to act on a motion to correct or reduce a sentence to the 120-day period following sentencing. Fed.R.Crim.P. 45(b) circumscribes yet more the limited language of Rule 35(b) by permitting no enlargement of the 120-day period. This Court recently found in *United States v. Breit*, 575 F.Supp. 238 (E.D.Va. 1983) that the language of the rule means a court must consider and decide a Rule 35(b) motion within 120 days after sentencing. Thus the post-sentencing powers of a sentencing court are temporally limited. The narrow question then is under what circumstances, if any, may a convicted YCA defendant have his YCA sentence converted to an adult sentence after the lapse of the Rule 35(b) 120-day period.

In *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), the Supreme Court addressed a related question. In *Tucker* defendant pleaded not guilty to a charge of armed bank robbery. He testified in his own behalf denying participation in the robbery and offering an alibi defense. For purposes of impeachment the prosecution was permitted on cross-examination to ask him whether he had previously been convicted of any felonies. He acknowledged three previous such convictions, a 1938 conviction in Florida, another in Louisiana in 1946, and a third in Florida in 1950. Following a jury verdict of guilty, the district judge conducted an inquiry into defendant's background, giving explicit attention to these three previous felony convictions acknowledged by defendant. The judge then sentenced him to serve 25 years in prison—the maximum term authorized.

Several years later it was conclusively determined that the 1938 and 1946 convictions were constitutionally invalid. At a subsequent 28 U.S.C. § 2255 motion for habeas corpus the convict argued that the evidence of the previous convictions impermissibly infected the guilty verdict. The district judge found that while the admission into evidence of the constitutionally invalid prior convictions was error, that error was harmless beyond a reasonable doubt. On appeal, the Court of Appeals for the Ninth Circuit agreed that while it had been firmly established that the evidence of these prior convictions did not contribute to the verdict, the evidence did lead the trial court to impose a heavier prison sentence than it otherwise would have. As a result, the appellate court affirmed the refusal to vacate the conviction, but remanded the case to the district court for resentencing. On appeal the Supreme Court held:

[T]he real question here is...whether the sentence in the 1953 federal case might have been different if the sentencing judge had known that at least two of the respondent's previous convictions had been unconstitutionally obtained.

We agree with the Court of Appeals that the answer to this question must be 'yes' for if the trial judge in 1953 had been aware of the constitutional infirmity of two of the previous convictions, the factual circumstances of the respondent's background would have appeared in a dramatically different light at the sentencing proceeding.... We cannot agree with the government that a re-evaluation of the respondent's sentence by the district court even at this late date will be either 'artificial' or 'unrealistic.'

*Tucker* at 448–49, 92 S.Ct. at 592–93.

As a result, the Supreme Court upheld the Ninth Circuit's remand of the case to the trial court for reconsideration of the respondent's sentence. *Tucker* then stands for the proposition that there do exist instances, long after the 120-day limit, in which it is appropriate for a sentencing court to reconsider a sentence in the light of events.

An even more apposite holding, involving as it does a sentencing review under the YCA, is *United States v. Ashby*, 502 F.2d 1163, Slip Op. at 3. (4th Cir.1974) (unpublished, per curiam). Defendant Ashby was under the age of 22 at the time of his conviction and therefore was eligible to be sentenced under the Federal Youth Correction Act unless the district court found that he would not derive benefit from treatment under the Act. Voicing no such finding the district court sentenced Ashby as an adult. On 26 June 1974, the Supreme Court decided *Dorszynski v. United States*, 418 U.S. 424, 444, 94 S.Ct. 3042, 3053, 41 L.Ed.2d 855 (1974), and held that an implicit finding of "no benefit" would not satisfy the Act; only an explicit expression that the youth offender would not derive benefit from treatment under the YCA would constitute compliance with the statute.

On appeal from conviction and sentence, the Fourth Circuit in *Ashby* considered the question of whether *Dorszynski*, applied retroactively, required that Ashby's sentence be vacated and that he be resentenced. In remanding to the district court for resentencing, the Court of Appeals stated:

> Although we conclude that on this record the sentence imposed was invalid, it may validly be imposed if the district court in its discretion concludes that Ashby would not benefit from treatment under the Act and makes that specific finding; otherwise Ashby should be sentenced under the Act.

While *Ashby* was a direct appeal and did not involve any infringement of the Rule 35(b) time limits, in that case as in Hemby's, a sentence was imposed valid in terms of the law as it was then understood. In both, the sentence was rendered invalid, or at any rate questionable, by a subsequent Supreme Court decision construing the terms of the statute. It may be argued, then, that if the district court in *Ashby* was empowered by the Court of Appeals to resentence in light of a subsequent Supreme Court decision, this Court, even absent such a mandate from the Court of Appeals, has jurisdiction to modify the sentence imposed by it on the defendant in light of *Ralston*.

In *United States v. Flebotte*, 503 F.2d 1057 (4th Cir.1974), the Court of Appeals again considered a pre-*Dorszynski* sentence in which there was no explicit "no benefit" finding. This case was not on direct appeal. It was a habeas corpus case and the 120-day limit had expired. The Fourth Circuit remanded with directions that the appellant's sentence be vacated and his sentence be reconsidered. The appeals court held that the question of "no benefit" should be "reconsidered" by the sentencing court and that an adult sentence might be imposed in the discretion of the sentencing court.

The lessons of both *Ashby* and *Flebotte* are not clearly applicable to this case but they are helpful. The Fourth Circuit has taken the position that it is appropriate for a district judge, whose sentencing omits language and findings later held by the Supreme Court to be mandatory, to reconsider that sentence in the light of the Supreme Court's requirements. The case at

bar is distinguishable from *Ashby* and *Flebotte* in that we deal now with the power of a second sentencing judge, having previously imposed a consecutive adult sentence, to make a "no further benefit" finding on motion by the United States in order for the youth offender to be removed from the reaches of the Act for the remainder of his first sentence.

Like the district courts in *Ashby* and *Flebotte*, this Court could not know that the Supreme Court in *Ralston* would find in the Act power to modify the original YCA sentence, nor could it know the language necessary to use in order to exercise that power. However, just as those district courts were directed by the Court of Appeals to reconsider whether the youth offenders would benefit under the YCA and to make their findings explicit, this Court has jurisdiction, in light of *Ralston*, to reconsider its sentencing of defendant Hemby and, if appropriate, to make the requisite "no further benefit" finding.

The United States argues also that since this Court has power to reopen defendant Hemby's sentencing proceedings, it also has jurisdiction to transfer this case to the judge who originally sentenced defendant under the Youth Corrections Act in order that he make the "no further benefit" finding. Before addressing the issue of this Court's transfer jurisdiction, the threshold question must be answered as to whether that original sentencing judge himself has jurisdiction to modify defendant Hemby's YCA sentence. The answer is supplied by both the Seventh and the District of Columbia Circuits. In *King v. Kenney*, 671 F.2d 1053 (7th Cir.1982), the Seventh Circuit considered the case of a defendant, sentenced under the YCA, paroled under the YCA, who, while on parole, was sentenced under the Missouri criminal code for attempted robbery and exhibiting a dangerous weapon. The State court imposed an adult sentence to run consecutive to his federal sentence. The federal Parole Commission then revoked King's parole and confined him at the United States Penitentiary at Terre Haute, Indiana, with adult non-YCA offenders. King filed a petition for a writ

of habeas corpus in the district court for the Southern District of Indiana, the court with territorial jurisdiction, alleging denial of his YCA right to incarceration either in a YCA institution or in a YCA unit. The district judge granted the writ, holding that denial of YCA placement to all YCA offenders with subsequent adult sentences was contrary to the Act and thus invalid. The Court of Appeals withheld its decision on appeal until the Supreme Court ruled on *Ralston*, itself a Seventh Circuit case. Noting, after *Ralston*, that the facts in *King* were different from those in *Ralston* only in that King's subsequent sentence as an adult was handed down by a State court and Robinson's by a federal court, the Seventh Circuit held:

> While the Supreme Court held that the YCA permits a second federal sentencing judge to make a determination of whether the YCA offender would continue to benefit from YCA treatment for the duration of his YCA term, certainly it follows that the federal sentencing judge, or his successor, Rule 25(b), Fed.R. Crim.P., who imposed the original YCA sentence could properly make this determination.

*King* at 1055.

Accordingly, the Indiana district court was reversed, and the case was remanded to the Eastern District of Missouri, the original YCA sentencing court, for a "no further benefit" determination consistent with the Supreme Court's holding in *Ralston*.

*In Re Coates*, 711 F.2d 345, 347 (D.C.Cir. 1983), addressed the case of an appellant sentenced to six concurrent ten-year terms of incarceration under the YCA. The Bureau of Prisons found appellant to be intractable and disruptive of YCA treatment programs. Consequently, the director informed the sentencing court by letter of appellant's past disruptive behavior and proposed transferring him to an adult facility. The district court notified the director by letter that the court had no objection to the suggested transfer as the court con-

curred that appellant would derive no further benefit from continued treatment as a youth offender. The Bureau thereafter terminated YCA treatment and transferred appellant to an adult federal penitentiary. When appellant objected, the exchange of correspondence was filed of record and appellant sought a reversal in the Court of Appeals. Appellant argued that, once a youth offender has begun to serve his YCA sentence, the Act does not permit the original sentencing court to determine whether the offender would continue to benefit from YCA treatment. Citing *King*, the D.C. Circuit held:

> The present case cannot be distinguished from *Ralston* in any principled way. If a subsequent sentencing court is empowered to make a 'no further benefit' finding with respect to an earlier sentence by a different court, it follows that the judge who imposed the original sentence could properly make this same determination.... We stress, however, that in making such determination the court is not resentencing the youth but merely modifying the terms and conditions of his confinement; the court is thus exercising the same authority with respect to youth offenders that the Bureau traditionally exercises with respect to adult offenders.

Placing these two cases in tandem, we see the outlines of a pattern. In *King* the second sentencing was a State proceeding, yet the Court of Appeals held that a federal habeas court, in light of that second adult State sentence, had the power, indeed the obligation, to transfer the habeas case to the original sentencing judge for the "no further benefit" finding permitted by *Ralston*.

In *Coates*, there was not even a second sentence imposed. The question before the D.C. Circuit was simply this: If the Bureau of Prisons determines that a youth offender is no longer deriving benefit from the YCA, how may he be removed from that program? The answer of the Court of Appeals was clear: The original sentencing judge has authority, apparently on the receipt of a mere letter and without a hearing, to enter a no further benefit finding and require the offender to serve the remainder of his YCA term as an adult. In other words, the authority to modify a YCA sentence, insofar as modification amounts simply to placing the offender in adult confinement, never leaves the original sentencing judge. The authority also arises, per *Ralston*, when a second federal sentencing judge, imposing a consecutive adult sentence, makes a "no further benefit" finding with respect to the original YCA sentence. None of the cases specifically deal with any continuing authority in the second sentencing judge.

It could be argued that this Court, therefore, should transfer this case to the district court which originally sentenced Hemby under the YCA. That court, per *Coates*, has the power to deal with the question. But none of the cases exclude continuing jurisdiction in the second sentencing court. In *King* and *Coates* no second federal judge had entered the judicial lists. In *King* a State judge was the second sentencing judge; in *Coates* there simply was no second offense. Here, however, this Court did try defendant Hemby, this Court found him guilty, and this Court imposed the consecutive adult sentence. It then had authority to alter the previously imposed YCA and its consideration of Hemby's aptitude for YCA treatment was later in time and, hence, better informed than the original sentencing judge. It still is. While a transfer to the original sentencing judge would not violate any rule made by the cases neither, it seems to me, would a retention of the case for consideration by this Court.

I conclude, then, that this Court has the authority as the second sentencing court to consider a motion by the United States (or by a defendant) that a defendant so sentenced will receive no further benefit from YCA. I conclude that if I concur then the remainder of the YCA sentence may be converted to an adult sentence.

Having fully considered the record hereinabove outlined, I find that defendant Hemby will derive no further benefit from

treatment under the Youth Corrections Act. An appropriate order shall issue.

And it is so ORDERED.

### JUDGMENT

In accordance with the accompanying finding that defendant will derive no further benefit from treatment under the Youth Corrections Act, it is ORDERED that the remainder of the sentence imposed by the United States District Court for the Southern District of New York be served by defendant as an adult.

And it is so ORDERED.